## WOLFSOHN v. HAVEN.

(Supreme Court, Appellate Division, Second Department.   June 3, 1904.)

1. PRINCIPAL AND AGENT—SERVICES—CONTRACT OF EMPLOYMENT—EVIDENCE.
   In an action for services rendered by plaintiff's assignor in contesting a municipal improvement assessment, evidence *held* insufficient to sustain a referee's finding that defendant had agreed to pay the assignor a percentage on the entire assessment in case defendant sold the land before the assessment should be confirmed, instead of a percentage on the amount the assignor succeeded in having deducted from the assessment.

Appeal from Judgment on Report of Referee.

Action by Sydney Wolfsohn against John Haven. From a judgment in favor of plaintiff on a referee's report, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

George A. Miller, for appellant.
Mark Ash, for respondent.

HIRSCHBERG, P. J.   In February, 1901, the defendant was the owner of certain real estate in the borough of Manhattan which was affected by an assessment of $7,449.50 laid by the board of assessors for the grading of 181st street, but not confirmed. He employed the plaintiff's assignor, a corporation organized to protect real estate owners in the matter of assessments levied for local improvements, to oppose the confirmation of the assessment in question, and the controversy relates to the amount of compensation which he should pay for the services which have been rendered pursuant to the employment. The company succeeded in delaying the confirmation until the defendant had sold and conveyed the property, and the plaintiff has recovered a judgment for 20 per cent. of the amount of the assessment, upon the theory that the defendant agreed to pay that percentage of whatever sum should be saved to him by the services of the company, and that the entire sum had been saved to him by the sale during the period of delay.

There was no written agreement executed. In the year 1900, however, the defendant had employed the same company to oppose the confirmation of an assessment upon property known as the Naegle avenue property, and it was the plaintiff's contention that the agreement between the parties in relation to the 181st street property was that the terms should be in all respects the same as in the Naegle avenue matter. The defendant's contention is that, in the oral agreement made with respect to the 181st street assessment, reference was had to the prior contract only as fixing the amount of the percentage, which had been reduced from 25 to 20 per cent.—25 per cent. being the company's usual charge—and that, as he had paid the percentage in the Naegle avenue case only upon the amount of the reduction of the assessment secured by the company, he should be required in this case to pay only upon the amount of the reduction secured, viz., upon the sum of $1,424.50 which the company succeeded in having deducted from the 181st street assessment.

The learned referee found the disputed fact in favor of the plaintiff, but the evidence is not sufficiently clear and convincing to justify an affirmance. The defendant testified, in effect, that he received a letter from the secretary of the company in February, 1901, calling his attention to the assessment, and inviting a conference with respect to it, and that he subsequently had one or more interviews with the secretary in reference to the employment, but that no allusion was made to the Naegle avenue transaction. He further testified that the agreement was made in the month of April, 1901, after he had received another letter from the company, dated March 25, 1901, inclosing two identical forms of contract for his signature, in which the provision for payment in case of a sale of the property before confirmation of the assessment was canceled in red ink, but that the amount of the percentage was left at 25 per cent., instead of 20; that he thereupon met the secretary, and told him that he would not sign the proposed contract, because it provided for the payment of the larger percentage in case of reduction, while his understanding was that he was to pay only 20 per cent., and that the secretary replied: "Yes; that is right. No matter about signing it now. We understand that. It is 20 per cent."

The language of the Naegle avenue contract, signed by the defendant, is as follows:

"I do hereby retain and employ the Realty Protective Company to act for me and in my behalf in the conduct of certain proceedings affecting my property and to furnish such legal and other expert services as it may deem necessary and to take such action as to the Realty Protective Company may seem advisable towards opposing the confirmation of an assessment for regulating Naegle Avenue between Dykman Street and 10th Avenue.

"And in consideration of its services, do hereby promise, assign and agree to pay to said Realty Protective Company 20 per cent. of whatever sum shall be reduced or saved to me.

"*In case the said confirmation is delayed until I shall sell my lands or any part thereof, then said percentage shall cover the amount so saved;* said percentage to cover all expenses and disbursements of every nature whatsoever, and, it is further agreed and understood that in case of no reduction or relief, the said Realty Protective Company, shall receive nothing."

There is no dispute about the fact that the company did, under date of March 25, 1901, send to the defendant a letter in reference to the 181st street assessment, saying:

"We are of the opinion that this assessment is in a degree excessive and shall be pleased to take steps in your behalf to oppose its confirmation as a lien and *to that end, enclose a form of authority for your signature and return.*"

It is also undisputed that this letter contained the two printed forms already referred to, and that a red ink line was drawn through the words which I have italicized in copying the Naegle avenue contract, the effect of which was to eliminate the provision for the payment of a percentage upon the entire assessment in case of a sale before confirmation. The president and secretary of the company each denied that the letter and inclosures were sent with his knowledge, and asserted that the act must have been inadvertent on the part of some subordinate, but no direct evidence was given of such fact, and the transaction certainly tends strongly to corroborate the defendant's contention. On the other hand, the evidence of the secretary, with whom the oral agreement appears to have been made, is somewhat obscure, and fails to disclose a meeting of minds upon the proposition that a percentage should be paid by the defendant upon the entire assessment in case he sold his land, or any part of it, before the assessment should be confirmed. His evidence may fairly be considered as limiting the adoption of the prior written contract to the amount of the percentage, which, as I have stated, had been reduced, for the defendant's special benefit, in the sum of 5 per cent. On direct examination he testified as follows:

"Q. Was anything said at that time with reference to the terms under which you were to go on? A. Yes; Mr. Haven did remark, 'Of course, you will go on for me at the usual terms.' That was all that was said at that conversation in reference to the matter. Q. Did you see Mr. Haven shortly after that again? A. Yes; he came in again, and said that he had not as yet seen Mr. Carter. I think he said he was in Europe, or out of town, but told us to go ahead. Q. Was anything else said in reference to your agreement or your terms under which you were going on? A. Nothing more was said. That was understood. Q. Was anything said about the Naegle Avenue matter? A. When the terms were mentioned, I said, 'The usual terms to you'—such as the Naegle avenue matter, the last proceeding we appeared in for him, in which the terms were 20 per cent."

In his cross-examination the force of this evidence was somewhat weakened, and an attempt was made to obtain upon the redirect examination the expression of a fuller and more positive understanding by which the defendant could be deemed to be bound by the Naegle avenue contract in its entirety, but it cannot be said that the effort was attended with much success. I think, in view of the documentary evidence, that the preponderance upon the main issue was clearly with the defendant, and that a new trial of the case is due to the demands of justice.

The judgment should be reversed.

Judgment reversed and new trial granted; costs to abide the event. All concur.